UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

CASE NO.: 4:23-cv-00317-WS-MAF

AMBER KEELER, individually,

        Plaintiff,

v.

UNIVERSITY GARDENS STUDENTS, LP,
a Foreign Limited Partnership doing business
as BLUE CASCADE LLC, a Florida Limited
Liability Company; ROSDEV HOSPITALITY
U.S., LLC, a Foreign Limited Liability
Company listed as General Partner to
UNIVERSITY GARDENS STUDENTS, LP;
and TALLAHASSEE OWNER 1, LLC, a
Foreign Limited Liability Company,

        Defendants.

_____/

## DEFENDANTS' MOTION FOR FINAL SUMMARY JUDGMENT

Pursuant to Federal Rule of Civil Procedure 56 and Local Rule 56.1, Defendants UNIVERSITY GARDENS STUDENTS, LP ("University Gardens") and ROSDEV HOSPITALITY U.S., LLC ("Rosdev") (collectively, "Defendants"), move this Court for an Order granting final summary judgment based on workers' compensation immunity and a lack of *prima facie* evidence demonstrating Defendants' duty, foreseeability, and causation, as follows:

### I.    Introduction

This case involves the targeted shooting of Plaintiff Amber Keeler at the Blue Cascade Apartments (the "Property"), at which Plaintiff Keeler worked as the property manager. The

4:23-cv-00317-WS-MAF
*Keeler, Amber v. University Gardens Students, L.P., et al.*
Motion for Summary Judgment

subject shooting occurred on October 4, 2022, and was committed by a lawful tenant of the Property, Ernest Lawson, during broad daylight.

At the time of the shooting, Benchmark Asset Management, LLC ("Benchmark") managed the Property on Defendants' behalf under a written management agreement. Under the agreement, Defendants paid the workers compensation premiums for Benchmark's employees, including Plaintiff, and otherwise delegated management of the Property to Benchmark. At the time of the shooting incident, Plaintiff was on the Property working in the course and scope of her employment as the Property's manager. She has subsequently received workers' compensation benefits as a result of the incident. Ergo, while the facts are unfortunate, Plaintiff has elected and received the exclusive remedy under Florida law, consisting of workers' compensation-based medical and lost wage benefits. As a result, as Plaintiff's statutory employers, Defendants are now immune from this litigation.

Additionally, Plaintiff has otherwise failed to meet her burden of advancing *prima facie* evidence of Defendants' duty, and, relatedly, as to the foreseeability of Mr. Lawson's targeted attack. Plaintiff has also failed to advance evidence that any breach of duty by Defendants caused or contributed to the shooting. For these reasons, final summary judgment should be granted as to all of Plaintiff's claims against Defendants.

## II.    Statement of Undisputed Facts and Procedural History

As noted above, the October 4, 2022 targeted shooting by Mr. Lawson, in which Plaintiff was injured, occurred at her workplace, the Blue Cascade Apartments, located at 400 Putnam Drive, Tallahassee, Florida (the "Property"). See **Exhibit 1 – Complaint.**

4:23-cv-00317-WS-MAF
*Keeler, Amber v. University Gardens Students, L.P., et al.*
Motion for Summary Judgment

At all relevant times, the Property was owned by University Gardens, in which Rosdev was general partner.[1] Prior to the incident, University Gardens entered into a Property Management Agreement (the "Agreement") with Benchmark, under which Benchmark acted as University Garden's agent and serve as the "sole and exclusive manager" of the Property regarding its management, operation, maintenance, leasing and other duties [] specified for the Property…" (**Exhibit 2** – Property Management Agreement - pg. 2 at section B). The Agreement also authorized Benchmark to hire, supervise, and pay all employees/personnel necessary for the management, maintenance, and operation of the Property and further required Benchmark to "maintain workers' compensation insurance covering all liability of the employer [Benchmark] under established workers' compensation laws," at University Gardens' expense. (*Id.* at p. 5, sections 9.1; 9.4).

In accordance with the Agreement, Benchmark hired Plaintiff as the Property's full time, day-to-day manager, and Defendants delegated the management of the Property to Benchmark and Ms. Keeler. Plaintiff continued to fill this role from the time of her hire as the Property's manager in July 2019 until the October 2022 shooting incident by Mr. Lawson. *See Plaintiff's Answers to Defendant's First Interrogatories*, attached hereto as **Exhibit 3**, p. 4 at ¶ 2.

As a result of injuries she sustained during Lawson's shooting, Plaintiff filed a Petition for Benefits with Florida's Office of the Judges of Compensation Claims ("JCC"). *See Amber Keeler v. Blue Cascade Apartments*, OJCC Case No. 24-005108JLN[2], and **Exhibit 4**. As part of this process, the Worker's Compensation Payout Ledger identifies a total of **$766,141.81** paid on

---

[1] General partner liability is commensurate with the liability (or lack thereof) of the limited partnership. *See* Fla. Stat. §620.1404(1); *Michigan Trump Tower, LLC v. TRG Sunny Isles V, Ltd.*, 2009 WL 10667784 (S.D. Fla. 2009).
[2] *Available at* https://www.jcc.state.fl.us/JCC/searchJCC/case.asp.

4:23-cv-00317-WS-MAF
*Keeler, Amber v. University Gardens Students, L.P., et al.*
Motion for Summary Judgment

Plaintiff's behalf from October 31, 2022, to September 19, 2023, as a result of the shooting. *See*

**Exhibit 4**, Worker's Compensation Payout Ledger. Plaintiff has also continued to receive medical,

wage loss, and housing benefits under worker's compensation through the present time. *See*

**Exhibit 7**, 67:2-6; 68:7-9; 68:20-24; and 97:14-16.

 In addition to her claim for workers compensation benefits, Plaintiff also filed the instant

lawsuit against Defendants, asserting claims of negligence. In her Complaint, Plaintiff avers that

she was a lawful invitee of the Property at the time of the shooting. (Exhibit 1, p. 6 at ¶ 8).

Specifically, Plaintiff alleges that the Defendants owed a duty to her as an invitee to keep the

Property reasonably safe for her use. (Exhibit 1, p. 6 at ¶ 10, p. 11 at ¶ 23, and p. 16, at ¶ 36).

 As discovery has developed in this litigation, the undisputed facts show that the shooter,

Earnest Lawson, was a tenant at the Property "for a couple of years," including on the date of the

shooting. *See* **Exhibit 3**, p. 5 at ¶ 6. Lawson's lease agreement (the "Lease"), signed by Mr.

Lawson and Plaintiff Keeler, with effective dates of August 1, 2022 to July 31, 2023, is attached

as **Exhibit 5**. *Id.* at p. 47.

 According to Lawson's arrest affidavit, Plaintiff was the leasing manager at the Property

and had just arrived at the Property when the shooting occurred. *See Second Judicial Circuit*

*Arrest/Probable Cause Affidavit*, attached as **Exhibit 6**.[3] Detectives reviewed video footage

positioned near the leasing office which depicted the shooting and confirmed that Lawson was the

shooter. *Id.* at p. 2;. Law enforcement also confirmed that Lawson was a tenant at the Property

and was two months behind on his lease payments and facing eviction. *Id.* at p. 2.

 After his arrest and receiving his *Miranda* rights, Lawson advised law enforcement that he

purchased a gun a week before the shooting to threaten and intimidate Plaintiff into reducing

---

[3] The Arrest Affidavit is admissible pursuant to Federal Rule of Evidence, 803(1), 803(2), 803(3) & 803(8).

delinquent fees he was facing as a tenant. *See* **Exhibit 6**, p. 2. Lawson further described that he waited in his vehicle for Plaintiff to arrive at the Property, passed a paper to her through the open passenger window, and pointed the firearm at her. *Id.* Lawson claimed the firearm was discharged unintentionally upon Plaintiff. *Id.* However, based on law enforcement's investigation from the video evidence and Lawson's statements, "it is believed that Lawson laid in wait for over 5 hours for [Ms. Keeler] to arrive." *Id.* When she did, Lawson approached Keeler "with a firearm, intentionally pointed the firearm at the victim and discharged the firearm, striking [Plaintiff] in the chest." *Id.*

Plaintiff's deposition testimony further expounded on her role at the Property and the facts surrounding the shooting. Ms. Keeler testified that she was "the face of the Property" and that Benchmark, her employer, was hired to be Defendants' "eyes and ears on the ground." *See* **Exhibit 7**, 29:23-25; 30:1-4; 141:3-5. She also testified that Benchmark managed security on the Property, and that she was the primary person who handled security issues, although she would seek input from University Gardens' principal Mark Rosenberg ("Rosenberg") for "some things." *Id.* at 41:4-10; 30:20-25; 31:1-8. She also testified that Benchmark is a property management company with expertise in managing properties on behalf of apartment complex owners and that Benchmark was responsible for the day-to-day operations of the Property. *Id.* at 28:5-9; 29:13-17.

According to Plaintiff's undisputed testimony, Benchmark performed background checks on prospective tenants and, as part of her role as the Property's manager, Plaintiff interacted with tenants and prospective tenants, "[e]very minute of every day." **Exhibit 7**, 34:5-12; 29:18-22. During her employment for three (3) years prior to the shooting, Plaintiff was given authority to make decisions with respect to security issues at the Property without having to consult or contact Defendants. *Id.* at 36:25; 37:1-3; 51:17-25; 52:1-21. She would often demonstrate improvements

4:23-cv-00317-WS-MAF
*Keeler, Amber v. University Gardens Students, L.P., et al.*
Motion for Summary Judgment

to the Property to Rosenberg in an effort to make it safer. *See, e.g., id.* at 52:18-21; 53:10-25; 54:1-6; 55:1-16; 55:22-25; 56:1-2; 60:18-25; 61:1-18; 62:7-10.

With respect to the shooting, Plaintiff Keeler arrived at the Property with the purpose of carrying out her duties as the Property's manager. **Exhibit 7**, 85:9-14. She exited her vehicle upon arriving at the Property, whereupon a vehicle came behind her and rolled its window down. The driver then offered her a piece of paper, and as she was about to walk to the vehicle to talk to the occupant, the shooter brandished a weapon and immediately fired one shot at her. *Id.* at 84:1-16; 88:2-3; 89:10-12. According to Plaintiff, the shooter was Ernest Lawson, who was a resident and tenant of the apartment complex. *Id.* at 85:15-23.

Plaintiff also testified that she had renewed Mr. Lawson' Lease on July 26, 2022, and it remained in effect on the date of loss. *See* **Exhibit 5**; **Exhibit 7**, 130:1-3; 132:1-6; 132:7-10. There were not any prior issues with Lawson brandishing a weapon at the property, and Plaintiff had no reason to anticipate Mr. Lawson would commit such an act. *Id.* at 132:16-21; 134:17-21. Plaintiff had no forewarning to know or expect that Lawson would shoot her. *Id.* at 133:22-25. Further, neither Rosenberg nor anyone with University Gardens or Rosdev had any forewarning or knowledge that Lawson would be violent towards Plaintiff. *Id.* at 134:5-11. She was not aware of any inciting event which precipitated the shooting because it was a sudden, unexpected occurrence. *Id.* at 134:13-19. Indeed, Plaintiff had made efforts prior to the shooting to make the Property safer for the residents and for herself, yet she still does not know why the shooting occurred. *Id.* at 136:9-20; 137:16-18.

Additionally, Mark Rosenberg, the director of operations and acquisitions of Rosdev, testified that the Property was owned by University Gardens. *See Mark Rosenberg's July 8, 2024 Deposition Testimony,* attached at **Exhibit 8,** 9:2-9, 19:10-11; 15:11-16. Rosenberg communicated

4:23-cv-00317-WS-MAF
*Keeler, Amber v. University Gardens Students, L.P., et al.*
Motion for Summary Judgment

with Plaintiff as the manager in charge of and handling operations at the Property. *Id.* at 22:1-3.

According to Rosenberg, Keeler regularly provided Rosenberg with occupancy reports and

renovation updates, and facilitated repairs and maintenance at the Property, including installation

of various security devices. *Id.* at 22:14-22; 23:23-25; 24:1-6.  Rosenberg determined the level of

security needed for each property by deferring to Benchmark and the Plaintiff's expertise. *Id.* at

24:21-23; 27:5-20. Benchmark – through the Plaintiff – was expected to apprise Defendants of any

crime on the Property and to make recommendations for any necessary security measures. *Id.* at

32:1-11.

On the date of incident, the Property was fully fenced with a gate which closed after hours.

Defendants had also allowed the installation of a camera system, a license plate reader, and security

signage. *Id.* at 39:13-17.  Plaintiff handled the process of approving all tenants, including Mr.

Lawson. *Id.* at 49:23-25; 50:1-2. Any recommendations made by Benchmark and/or Plaintiff were

approved and adopted by Defendants, and there were no outstanding security requests at the time

of the shooting. *Id.* at 65:19-23.

### III.    Summary of the Argument

Under Florida's worker's compensation framework, Defendants were statutory employers

of the Plaintiff at the time of the subject shooting on October 4, 2022. As such, Defendants are

immune from suit arising from Plaintiff's injuries sustained during the course and scope of her

employment.

To this end, Defendants entered into an Agreement with Benchmark, delegating

management of the Property to Benchmark and its employees. At the time of the shooting, Plaintiff

was acting in the course and scope of her job duties as manager of the subject Property, and she

made a claim for and received worker's compensation benefits as a result of her injuries sustained

4:23-cv-00317-WS-MAF
*Keeler, Amber v. University Gardens Students, L.P., et al.*
Motion for Summary Judgment

in the shooting. Under Section 440.10(b), Florida Statutes, Defendants are statutorily immune from this tort litigation since Defendants contracted with Benchmark and sublet management of the Property to Benchmark. In turn, employees of Benchmark, including the Plaintiff, are deemed to be employed by Defendants. Under the terms of the Agreement, Defendants were contractually obligated to provide and secure payment of the worker's compensation benefits that Plaintiff ultimately received. As such, Defendants are entitled to statutory immunity, and Plaintiff's claims against Defendants should be disposed of on summary judgment accordingly.

In addition, the undisputed facts adduced in discovery demonstrate that Mr. Lawson's criminal activity was an unfortunate, precipitous, targeted attack against the Plaintiff which was not expected by anyone. Because this was a targeted attack, its occurrence was not legally foreseeable nor preventable, and no breach of any duty on the part of Defendants legally caused or contributed to the attack.

The unfortunate facts of this case are not lost on the Defendants; however, this is not a basis for imposition of a legal duty. Plaintiff's allegation that the Defendants owed a legal duty to prevent a shooting as a result of a targeted attack is not supported by the law. To the contrary, Florida law is clear that the Defendants do *not* owe a legal duty to prevent the unforeseeable criminal actions of a third party. Even considering the factual framework of this case, a legal duty cannot be created or imposed since there is no evidence to demonstrate the foreseeability of a targeted, close-range shooting of which Plaintiff herself testified was sudden and unexpected, despite that it was her role to evaluate security on the Property and to make recommendations to prevent reasonably foreseeable criminal activity.

Even if this Court determines that a duty does exist, Plaintiff has failed to present any evidence to demonstrate the Defendants were the "but for" cause of Plaintiff's damages. Instead

4:23-cv-00317-WS-MAF
*Keeler, Amber v. University Gardens Students, L.P., et al.*
Motion for Summary Judgment

of evidence, Plaintiff's causation theory consists of conjecture, and is speculatively based on the improper stacking of inferences.

As such, this Court should grant final summary judgment in favor of the Defendants for three (3) reasons: 1) Defendants are immune from suit under Florida's worker's compensation laws; 2) there is no basis in the law for a duty to be imposed on the Defendants under these facts; and 3) even if this Court determines a legal duty was owed by the Defendants, there is no evidence to show the Defendants' alleged negligence was the proximate cause for the Plaintiff's damages, as Plaintiff's theory of causation amounts to nothing more than impermissible inference stacking. Defendants respectfully request an Order so providing.

## IV.   Incorporated Memorandum of Law

A.   <u>Summary Judgment Standard</u>

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56.; *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party bears the initial burden of proving the absence of a genuine issue of material fact. *Id.* at 323. The burden then shifts to the nonmoving party, who is required to "go beyond the pleadings" to establish the existence of a "genuine issue for trial." *Id.* at 324 (cit. and punc. omitted). A dispute about a material fact is genuine only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Genuine disputes are those in which the evidence is such that a reasonable jury could return a verdict for the non-movant. For factual issues to be considered genuine, they must have a real basis in the record." *Mize v. Jefferson City Bd. Of Educ.*, 93 F.3d 739, 742 (11th Cir.1996) (cits. omitted).

4:23-cv-00317-WS-MAF
*Keeler, Amber v. University Gardens Students, L.P., et al.*
Motion for Summary Judgment

The courts have repeatedly cautioned that "mere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion." *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005) (per curiam) (*citing Bald Mountain Park, Ltd. v. Oliver*, 863 F.2d 1560, 1563 (11th Cir. 1989)). Moreover, "[a] mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990) (*citing Anderson*, 477 U.S. at 252).

B.    Defendants are Immune from Suit as Plaintiff's "Statutory Employer"
      Under the Florida Workers' Compensation Act.

Florida's Workers' Compensation Act (the "Act") "assure[s] the quick and efficient delivery of disability and medical benefits . . ." Fla. Stat. § 440.015. The Act's framework is intended to provide "a strict liability system of compensation for injured workers [whereby] the worker receives the guarantee of rapid compensation for work related injuries but in return is precluded from bringing a common-law negligence action." *Boston ex rel. Estate of Jackson v. Publix Super Markets, Inc.*, 112 So. 3d 654, 656 (Fla. 4th DCA 2013). Indeed, these benefits have been expressly

> designed, intended, and contemplated for workplace injuries that have occurred in the course and scope of employment. The workers' compensation system seeks to balance competing interests . . . . [and] provides employees limited medical and wage loss benefits, **without regard to fault**, for losses resulting from workplace injuries in exchange for the employee relinquishing his or her right to seek certain common law remedies [] under certain circumstances.

*Jones v. Martin v. Electronics, Inc.*, 932 So. 2d 1100, 1104 (Fla. 2006) (emphasis added). The Act is "based on a mutual renunciation of common-law rights and defenses by employers and employees alike." Fla. Stat. § 440.015. This Court is obligated to construe the Workers' Compensation Act "in its entirety and as a consistent whole." *Gonzalez v. Quinco Elec., Inc.*, 171

4:23-cv-00317-WS-MAF
*Keeler, Amber v. University Gardens Students, L.P., et al.*
Motion for Summary Judgment

So. 3d 153, 155 (Fla. 1st DCA 2015); *Roberson v. Winn Dixie Stores, Inc.*, 669 So. 2d 294, 296

(Fla. 1st DCA 1996).

Under the Act, an employer's liability is exclusive. Fla. Stat. § 440.11(1). Indeed, a

statutory employer's "duty to provide workers' compensation benefits supplants tort liability to

those injured on the job" and is intended to serve as a *quid pro quo* for substituting the strict liability

benefits scheme in its place. *Employers Ins. Of Wausau v. Abernathy*, 442 So. 2d 953, 954 (Fla.

1983*); see also Lache v. Bal Harbour Hotel, LLC*, 104 F.Supp.3d 1379 (S.D. Fla. 2015) (describing

the Act as "a quid pro quo statute – the employee foregoes the right to sue in exchange for the

employer's assumption of liability without fault"). In exchange for an employer's compliance with

the Act, an employer is immune from "common law negligence actions for damages arising from

work-related injuries." *R.L. Haines Construction, LLC v. Santamaria*, 161 So. 3d 528, 530 (Fla.

5th DCA 2014) (*citing Bakerman v. Bombay Co., Inc.*, 961 So. 2d 259, 262 (Fla. 2007)); *see also

Eller v. Shova*, 639 So. 2d 537, 540-41 (Fla. 1993). It is therefore axiomatic that a civil suit should

only occur in the most egregious circumstances. *Bakerman*, 961 So. 2d at 262; *see also* Fla. Stat.

§ 440.11. Indeed, "[a] civil personal injury lawsuit by an employee against an employer

under section 440.11 was intended to be the rarest of exceptions to the immunity granted to the

employer." *List Indus., Inc. v. Dalien*, 107 So. 3d 470, 473 (Fla. 4th DCA 2013).

The inquiry whether an entity is a plaintiff's "statutory employer" turns on whether the

entity has incurred a contractual obligation to a third party, a part of which obligation the entity

has delegated or sublet to a subcontractor whose employee is injured." *Miami Herald Pub. v.

Hatch*, 617 So. 2d 380, 381 (Fla. 1st DCA 1993). In the event

> a contractor sublets any part or parts of [its] work to a subcontractor [], all of the
> employees of such contractor and subcontractor [] engaged on such contract work
> shall be deemed to be employed in one and the same business or establishment, and
> the contractor shall be liable for, and shall secure, the payment of compensation to

all such employees, except to employees of a subcontractor who has secured such payment.

Fla. Stat. § 440.10(1)(b); *see also Gator Freightways, Inc. v. Roberts*, 550 So. 2d 1117, 1119 (Fla. 1989). Therefore, for Defendants to be Plaintiff's "statutory employer" under section 440.10, there must be a contractual obligation to provide property management services to residents of the Property. *See Smith v. Mariner's Bay Condo. Ass'n, Inc.*, 789 So. 2d 1228, 1229 (Fla. 3d DCA 2001). Additionally, Defendants must have sublet "any part or parts of [the] contract work to a subcontractor . . ." Fla. Stat. § 440.10(1)(b); *Mathis v. Sacred Heart Health Sys., Inc.*, 187 So. 3d 951, 952 (Fla. 1st DCA 2016).

To be considered a "contractor" under the Act, the "primary obligation in performing a job or providing a service must arise out of a contract." *Sotomayor v. Huntington Broward Assocs. L.P.*, 697 So. 2d 1006, 1007 (Fla. 4th DCA 1997). This "'primary obligation' refers to an obligation under the prime contract between the contractor and a third party, not to any agreement between the contractor and subcontractor.*" Miami Herald Publ'g.*, 617 So. 2d at 383. In such circumstances, a contractor is required to "secure payment of compensation" under the Act without any imposition of duty as to whether those benefits are actually paid. Fla. Stat. § 440.38(1)(a); *Mena v. J.I.L. Const. Grp. Corp.*, 79 So. 3d 219, 224 n.1 (Fla. 4th DCA 2012). In addition, a contractor is also immune from suit where worker's compensation benefits are paid by the contractor on behalf of another. *Carnegie Gardens Nursing Center v. Banyai*, 852 So. 2d 374, 375 (Fla. 5th DCA 2003).

When it comes to identifying a plaintiff's section 440.10(1)(b) "statutory employer(s)," there is no "one size fits all" answer. Florida state and federal decisions demonstrate that a statutory employment relationship can arise under a variety of factual circumstances basing the employer's immunity. *See, e.g., Bal Harbour Tower Condo. Assoc., Inc. v. Bellorin*, 351 So. 3d 96 (Fla. 3d

DCA 2022) (condominium association was the statutory employer of subcontracted valet injured on the premises, since the association's primary obligation of providing valet services to unit owners arose from contract); *Felder v. King Motor Co. of S. Fla.*, 110 So. 3d 105, 106 (Fla. 4th DCA 2013) (car dealership was a statutory employer of an employee of the dealership's contracted-with car cleaning company who fell in a hole on the dealership's property); *Carnegie Gardens Nursing Ctr. v. Banyai*, 852 So. 2d 374, 375 (Fla. 5th DCA 2003) (nursing home contracted with staffing agency was statutory employer of agency's employee); *Yero v. Miami Dade County*, 838 So.2d 686 (Fla. 3d DCA 2003) (general contractor was statutory employer of subcontractor's employee); *Lizarraga v. American Airlines, Inc.*, 2000 WL 35593213, at *3 (S.D. Fla. Sept. 21, 2000) (finding airline was the statutory employer of security guard hired by Globe Aviation, which was under contract with airline to provide security over cargo services operations); *Delta Air Lines, Inc. v. Cunningham*, 658 So. 2d 556, 557 (Fla. 3d DCA 1995) (finding Delta to be statutory employer of cleaning company's employee where cleaning company was required to maintain worker's compensation benefits under the contract, and the cleaning company paid the employee's workers' compensation claim). In fact, consideration is made – and immunity is afforded – to an owner or contractor even where the coverage for worker's compensation benefits is carried by the subcontractor and then paid as a result of a plaintiff's injuries during the course and scope of employment for the subcontractor. *See, e.g., Hess v. Coca-Cola Refreshments USA Inc.*, 2015 WL 12839500 (M.D. Fla. 2015) (Coca-Cola was statutory employer of electrician injured while performing work at Coca-Cola facility as an employee of an independent subcontractor engaged to install pallet and case conveyors despite that contractor paid employee's worker's compensation premiums and afforded benefits).

Even if a contract does not identify the specific duty the statutory employer owed to a third party at the time of the employee's injuries, if the duty is directly related and necessary to the fulfillment of the other contractual duties, statutory immunity will stand. *See Broward County v. Rodrigues*, 686 So. 2d 774 (Fla. 4th DCA 1997) (reversing the denial of summary judgment and explaining that the county was the statutory employer of a tank cleaning contractor's employee because, although the county's written contracts with municipalities did not specify that the county was obligated to perform tank cleaning at a specified facility, such duty was directly related and necessary to the county's contractual obligations to the customer-municipalities). In fact, "[i]t well established [] that to satisfy section 440.10(1)(b), the contractual obligation may be implied, and does not need to be pursuant to an express provision in a written contract." *Mitchell v. Osceola Cnty. Sch. Bd.*, 159 So. 3d 334, 336 (Fla. 1st DCA 2015); (*citing Rabon v. Inn of Lake City, Inc.*, 693 So.2d 1126, 1129 (Fla. 1st DCA 1997)). Moreover, a contractual obligation basing statutory immunity may even arise from an offer contained in an advertisement. *Id.* (*citing Izadi v. Machado (Gus) Ford, Inc.*, 550 So.2d 1135, 1139 (Fla. 3d DCA 1989)).

In the instant case, it cannot be disputed that Defendants contracted with Benchmark for the purposes of managing the Property and to oversee its day-to-day operations. To be sure, Defendants incurred a contractual obligation to the Property's tenants to provide management of the Property and its operations, pursuant to the tenants' various lease agreements. Such express obligations are listed in the lease agreement, including references to a manager of the apartment complex and the manager's address (section 1.1), providing for repairs, installation, services or security related matters to be submitted to the designated representative (section 1.29), and the property owner's agreement to pay for certain utilities, such as water, electricity, sewer, trash, stormwater, and internet. *See, e.g.,* **Exhibit 5**, p. 4, ¶ 1.10. Defendants were also contractually

4:23-cv-00317-WS-MAF
*Keeler, Amber v. University Gardens Students, L.P., et al.*
Motion for Summary Judgment

obligated, through the lease agreements with each of their tenants, to implement pest control; maintain common areas, fixtures, hot water, air conditioning, and common furniture; to comply with safety and sanitation laws; and to make reasonable repairs to the Property. **Exhibit 5**, p. 8, ¶ 1.28; p. 10, ¶ 1.34;. Defendants were furthermore required to pay Benchmark's employees' (including Ms. Keeler's) workers' compensation insurance per the terms of the Management Agreement. *See* ECF No. 1-2, p. 13, ¶¶ 9.1; 9.4. Moreover, the tenants exclusively dealt with the property manager, Benchmark, not anyone affiliated with the Defendants. Hence, an implied obligation to provide tenants with management services also existed.

In short, the Defendants' express and implied contractual obligation to provide services related to management of the Property to Defendants' tenants was sublet to Benchmark and its employees, including Plaintiff Keeler. Because Defendants subcontracted with Benchmark to provide the services Defendants contractually owed to the Property's tenants, Defendants and Benchmark are deemed to be employed in one and the same business under the Act, and Defendants are the legal statutory employer of Benchmark's employees. *See* Fla. Stat. § 440.10(1)(b). Stated differently, Defendants were the collective "Contractor" which delegated the management and other contractual responsibilities to Benchmark as the "Subcontractor," and Benchmark, via the Property Management Agreement, assumed the contractual obligation to supply worker's compensation benefits to Benchmark's employees, including Plaintiff Keeler. As such, Defendants are entitled to workers' compensation immunity pursuant to Florida Statute § 440.10(1)(b) for all claims now presented against Defendants by Plaintiff Keeler. Summary judgment in favor of Defendants is warranted as to all of Plaintiff's claims.

4:23-cv-00317-WS-MAF
*Keeler, Amber v. University Gardens Students, L.P., et al.*
Motion for Summary Judgment

C.    *Mr. Lawson's Criminal Act Was Not Foreseeable as a Matter of Law.*

The tort of negligence includes the four elements of duty, breach, causation, and damages. *Casey v. Mistral Condo. Ass'n, Inc.*, 380 So. 3d 1278, 1283 (Fla. 1st DCA 2024). Since negligent security actions concern the landowner's alleged failure to keep the premises safe and secure from foreseeable criminal activity, negligent security cases fall under the auspices of premises liability as opposed to ordinary negligence. *Nicholson v. Stonybrook Apartments, LLC*, 154 So. 3d 490, 494 (Fla. 4th DCA 2015).

Under Florida law, a party generally has no legal duty to control the conduct of a third person to prevent that person from causing harm to another. *Aguila v. Hilton, Inc.*, 878 So.2d 392 (Fla. 1st DCA 2004). A necessary component of the analysis as to whether a duty is owed is whether the criminal activity was foreseeable. *See Stone v. United States*, 373 F.3d 1129, 1132 (11th Cir. 2004) ("Under Florida law, an owner of a premises has no duty to protect an invitee from the willful criminal act of another unless that conduct could have been foreseen or anticipated."); *Satchwell v. LaQuinta Motor Inns, Inc.*, 532 So. 2d 1348, 1349 (Fla. 1st DCA 1988) ("Whether appellee was under a duty to provide security guards and other precautions to prevent the criminal attack [] turns on whether it was reasonably foreseeable that such attacks would occur in the absence of such precautions [as] [i]f the criminal attack is not foreseeable, no duty arises.") (cits. and quot. omitted); *Paterson v. Deeb*, 472 So. 2d 1210, 1214 (Fla. 1st DCA 1985) ("[A] landowner should not be required to take precautions against a sudden attack which the landowner has no reason to anticipate.").

By way of example, the Third District Court of Appeals recently determined that a personal, targeted attack was not foreseeable. *Brownlee v. 22nd Avenue Apartments, LLC*, 389 So.3d 695 (Fla. 3 d DCA 2024). In *Brownlee*, the trial court granted summary judgment in favor

4:23-cv-00317-WS-MAF
*Keeler, Amber v. University Gardens Students, L.P., et al.*
Motion for Summary Judgment

of the owner and manager of an apartment complex, which plaintiff appealed. The action arose from a shooting at an apartment complex when the plaintiff, a non-resident, was shot by an unknown assailant. The landowner defendants filed a summary judgment motion, arguing that they could not be held liable as a result of an unforeseeable, targeted attack that occurred while plaintiff was standing alone in a secluded area of the complex. On appeal, the Third District found that the plaintiff presented no evidence to illustrate that the defendants could have foreseen the incident given it was suggested that plaintiff was watched and followed to a remote area of the premises and then attacked by an unknown assailant. *Id.* at 699. Therefore, the appellate court found, the plaintiff failed to establish that the shooting was foreseeable. Summary judgment in favor of the complex owner and management entity was thus affirmed. *Id.* at 700; *see also Bing v. Alachua County*, No. 1D2023-0932, 2024 WL 3687645 (Fla. 1st DCA Aug. 7, 2024) ("Here, [] the only alleged connection between [the County landowner] and the shooter was that the shooter was on [the County's] property when he fired his gun. That connection [] was not sufficient to establish a duty on Appellee's part to the decedent or to the general public.").

The evidence in this case shows that Mr. Lawson specifically targeted Plaintiff and intended to confront her at the Property. Mr. Lawson knew Plaintiff worked at the Property and would arrive at some point in the day. Mr. Lawson, a tenant with all rights to be on the Property, waited in his vehicle from approximately 7:00 a.m. on the day of the incident for Plaintiff to arrive. *See* **Exhibit 6**. As soon as she did, Mr. Lawson approached Plaintiff, handed her a piece of paper, and shot her. *Id.* at p. 2. Mr. Lawson then fled the scene in his vehicle, apparently went to work, and was later apprehended by police at his place of employment. Per Mr. Lawson's admission in the Arrest Affidavit, he conceded that he was delinquent in rental fees and therefore targeted the Plaintiff. *Id.* The targeted nature of the attack, coupled with no prior indication to anyone that Mr.

Lawson would commit such an act, as well as his unfettered access to the Property as a tenant, rendered the incident not foreseeable as a matter of law.

> D.     Defendants Owed No Legal Duty to Plaintiff to Prevent a Targeted Shooting.

In order to recover of the Defendants in this case, Plaintiff must show that she was owed a duty by the Defendants which was breached, leading to her injuries. *Clay Electric Coop. v. Johnson*, 873 So. 2d 1182, 1185 (Fla. 2004). Indeed, the duty of care is the "a minimal threshold legal requirement for opening the courthouse doors." *Wallace v. Dean*, 3 So. 3d 1035, 1046 (Fla. 2009), (cit. omitted). More specifically, duty must be one "recognized by the law, requiring the [defendant] to conform to a certain standard of conduct, for the protection of others against unreasonable risks." *Clay Electric*, 873 So. 2d at 1185 (cit. omitted). The bases for imposing a duty of care include those arising from: "(1) legislative enactments or administrative regulations; (2) judicial interpretations of such enactments or regulations; (3) other judicial precedent; and (4) a duty arising from the general facts of a case." *Curd v. Mosaic Fertilizer, LLC*, 39 So. 3d 1216, 1227-28 (Fla. 2010) (*citing Clay Electric*, 873 So. 2d at 1185). "Th[is] fourth category encompasses 'that class of cases in which the duty arises because of a foreseeable zone of risk arising from the acts of the defendant.'" *Jackson Hewitt, Inc. v. Kaman*, 100 So. 3d 19, 28 (Fla. 2d DCA 2011) (*quoting McCain*, 593 So. 2d 500, 503 n.2 (Fla. 1992)). Whether a defendant owes a duty to a plaintiff is an issue of law ripe for determination on summary judgment. *See Goldberg v. Fla. Power & Light Co.*, 899 So. 2d 1105, 1110 (Fla. 2005); *McCain*, 593 So. 2d at 502 ("Duty is a question of law.").

A critical aspect of whether one owes a duty to another is "whether the defendant's conduct foreseeably create[s] a broader 'zone of risk' that poses a general threat of harm to others." *Id*. "[T]he zone of risk created by a defendant defines the scope of [its] legal duty and the scope of the

4:23-cv-00317-WS-MAF
*Keeler, Amber v. University Gardens Students, L.P., et al.*
Motion for Summary Judgment

zone of risk is in turn determined by the foreseeability of a risk of harm to others." *Smith v. Fla.*

*Power & Light Co.,* 857 So. 2d 224, 229 (Fla. 2d DCA 2003).

Florida courts have long held "there is no common law duty to prevent the misconduct of

third persons." *Trianon Park Condo. Ass'n, Inc. v. City of Hialeah*, 468 So. 2d 912, 918 (Fla. 1985)

(cit. omitted); *Gross v. Family Servs. Agency, Inc.*, 716 So. 2d 337, 338 (Fla. 4th DCA 1998).

Indeed, "Florida courts have long been loathe to impose liability based on a defendant's failure to

control the conduct of third party." *Boynton v. Burglass*, 590 So. 2d 446, 448 (Fla. 3d DCA 1991).

Logically, it follows that "a party has no legal duty to control the conduct of a third person to

prevent that person from causing harm to another." *Aguila, supra,* 878 So. 2d at 398.

The lack of a legal duty of a party to control the conduct of a third person was described

by the Fourth District in analyzing the tragic events of *Knight v. Merhige*, 133 So. 3d 1140 (Fla.

4th DCA 2014). There, the defendants' emancipated son shot and killed several family members

at a Thanksgiving Day gathering. *Id.* at 1143. Representatives for the victims brought claims

against the parents, claiming that the parents of the shooter created a foreseeable zone of risk based

on knowledge of their son's medical history and violent propensities. *Id.* The parents moved to

dismiss the complaints with prejudice, which motions were granted by the trial court since the

parents did not have a "legal duty to control the actions of their emancipated son," nor did the

parents have the ability to control their son's behavior. *Id.* at 1144. Therefore, the victims'

representatives "could not overcome the general rule that there is no duty to control the conduct of

a third person to prevent him from causing physical harm to another." *Id.* (quot. omitted).

In reaching its decision, the Fourth District addressed the element of duty in detail. *Id.* at

1144-46. It inquired into whether "defendant's conduct foreseeably create[s] a broader 'zone of

risk' that poses a general threat of harm to others." *Id.* at 1144-45 (*quoting McCain*, 593 So. 2d at

4:23-cv-00317-WS-MAF
*Keeler, Amber v. University Gardens Students, L.P., et al.*
Motion for Summary Judgment

502). In its analysis, the court observed that "[g]enerally, there is no duty to control the conduct of

a third person to prevent [that person] from causing physical harm to another." *Id.* at 1145 (*quoting*

*Carney v. Gambel*, 751 So. 2d 653, 654 (Fla. 4th DCA 1999)); *see also Boynton*, 590 So. 2d at

448. Ultimately, the dismissal of plaintiffs' claims against defendants was affirmed.

In this case, summary judgment is proper since Defendants did not have an individualized

legal duty to protect an apartment complex employee from a targeted attack by a tenant. There is

no basis in the law, as discussed in *Knight*, that entities such as the Defendants, would owe a duty

to Plaintiff for a targeted attack where there is no basis for the Defendants to be able to foresee the

criminal actions of the attacker without warning. Even in *Knight*, the Fourth District found that

family members' awareness of violent propensities and past medical history was insufficient to

impose a legal duty on a family member to prevent a targeted attack. *See Knight*, 133 So. 3d at

1143. In this case, Defendants were not insurers of Plaintiff's safety and owed no duty to protect

her from a sudden, precipitous, unexpected, targeted attack by an aggrieved tenant that had no

violent background and who was legally permitted to be on the Property where the attack occurred.

In sum, despite her allegations, Plaintiff has failed to demonstrate any legal basis imposing

upon the Defendants an individual and specific legal duty owed to Plaintiff to prevent the

unexpected, targeted shooting by Lawson. The facts of this case do not create a foreseeable zone

of risk contemplated by the appellate courts. Therefore, final summary judgment should be granted

in favor of the Defendants.

    E.    <u>Summary Judgment Should Be Granted Since No Evidence Supports that
Defendants Caused Any of the Alleged Damages to Plaintiff.</u>

For Plaintiff's claim to succeed, she must demonstrate that Defendants' alleged breach of

duty was the "proximate cause" of her injuries. *See Stahl v. Metropolitan Dade Cnty.*, 438 So. 2d

14, 17-18 (Fla. 3d DCA 1983). Proximate cause may be decided as a matter of law where an

4:23-cv-00317-WS-MAF
*Keeler, Amber v. University Gardens Students, L.P., et al.*
Motion for Summary Judgment

alleged injury is merely a "possible" result of alleged negligent conduct, and not the probable or likely result of the alleged negligent conduct. *See Miranda v. Home Depot, Inc.*, 604 So. 2d 1237 (Fla. 3d DCA1992); *see, e.g., Grayson v. Harris*, 608 So. 2d 896, 897 (Fla. 3d DCA 1992); *Palma v. BP Prods. N. Am., Inc.*, 347 F. App'x 526, 528 (11th Cir. 2009). A plaintiff carries the burden of proving that a defendant's alleged negligence was the likely legal cause of her injuries. *See Gooding v. University Hosp. Bldg., Inc.*, 445 So. 2d 1015, 1018 (Fla. 1984). "Proximate cause requires both a showing of cause-in-fact and a showing of foreseeability." *Watson v. City of Hialeah*, 552 So. 2d 1146, 1149 (Fla. 3d DCA 1989).

Legal or proximate cause is defined as "that cause which, in natural and continuous sequence, unbroken by any efficient intervening cause, produces the injury, and without which the result would not have occurred." *Lingefelt v. Hanner*, 125 So. 2d 325, 326 (Fla. 3d DCA 1960); *see also Fellows v. Citizen Fed. Sav. & Loan Ass'n. of St. Lucie Cnty.*, 383 So. 2d 1140, 1141 (Fla. 4th DCA 1980) ("Proximate cause means that the alleged wrong of the defendant caused the damage plaintiff claims."). In order to be subjected to liability, "the defendant's conduct must 'create' the risk." *Aguila,* 878 So. 2d at 396 (*citing McCain*, 593 So. 2d at 504).

To determine whether proximate causation exists, Florida courts generally follow the "but-for" test, i.e., *but for* the negligent act or omission, the injury would not have occurred. *Stahl*, 438 So. 2d at 17-18. Thus, proof of causation in fact or but for causation is inherent in the concept of proximate causation. It is "fundamental" that the "mere occurrence of an accident does not give rise to an inference of negligence." *Cassel v. Price*, 396 So. 2d 258, 264 (Fla. 1st DCA 1981); *Miller v. Aldrich*, 685 So. 2d 988, 990 (Fla. 5th DCA 1997) ("The fact that an accident occurred does not, in an ordinary case, establish breach of a duty by another party, or causation.").

4:23-cv-00317-WS-MAF
*Keeler, Amber v. University Gardens Students, L.P., et al.*
Motion for Summary Judgment

      Ergo, even if this Court determines that a legal duty was owed by the Defendants to Plaintiff, final summary judgment is still ripe and should be granted as Plaintiff's alleged injuries were "merely a 'possible' result of [the] alleged negligent conduct" of the Defendants and were not created thereby. *See Miranda*, 604 So. 2d at 1238; *Aguila*, 878 So. 2d at 396 (*citing McCain*, 593 So. 2d at 504). In this case, Plaintiff has failed to demonstrate by any evidence that the Defendants were the legal cause of Plaintiff's injuries. *See Gooding*, 445 So. 2d at 1018. There is no evidence to show that any action or inaction by the Defendants was a "natural, direct and continuous sequence" with Plaintiff's alleged damages. *See Fellows*, 383 So. 2d at 1141. It cannot reasonably be said that "but for" the Defendants' actions or inaction, the "out-of-character" actions by Lawson would have been prevented. *Id.* There is no foreseeability for such actions, causing the element of causation to fail. *See Watson*, 552 So. 2d at 1149 (describing the requirements of proximate cause of being both the "cause-in-fact and a showing of foreseeability"). No evidence demonstrates that the Defendants "created" the risk Lawson posed to the Plaintiff. *See Aguila*, 878 So. 2d at 396. On the contrary, Plaintiff testified that Lawson never physically assaulted her or threatened her prior to the October 4, 2022 attack. There is also no evidence that the Defendants knew Lawson would be violent towards Plaintiff – or anyone else for that matter. The mere occurrence of Plaintiff being the unfortunate victim of an "out-of-character" shooting by her an aggrieved tenant does not give rise to an inference of negligence. *See Miller*, 685 So. 2d at 990; *Cassel*, 396 So. 2d at 264.

      Plaintiff has no evidence to demonstrate that the Defendants' alleged acts or omissions caused Lawson to shoot her. Plaintiff had never observed Lawson brandishing a weapon at the property. **Exhibit 7**, 132:16-21. Despite that she was the Property's "eyes and ears," Plaintiff had no reason to expect that Lawson would commit the act which rendered her injuries and certainly

4:23-cv-00317-WS-MAF
*Keeler, Amber v. University Gardens Students, L.P., et al.*
Motion for Summary Judgment

no forewarning to know or expect that Lawson would shoot her. *Id.* at 134:17-21; 133:22-25.

Likewise, Defendants had no information to suggest Lawson's attack was imminent either. *Id.* at

134:5-11.  No one was aware of any inciting event which precipitated the shooting, which

consisted of a sudden, unexpected occurrence. *Id.* at 134:13-15; 34:16-19.

On these facts, Plaintiff has failed to evince any evidence demonstrating that a breach of

any duty by the Defendants is legally sufficient to meet the proximate cause requirement. As such,

Plaintiff's causation theory falls flat as it is improperly premised on the stacking of inferences that

are not supported by the evidence. Florida law clearly prohibits such improper inferences and

conclusions from testimony that is itself on shaky ground:

> [I]f a party to a civil action depends upon the inferences to be drawn from
> circumstantial evidence as proof of one fact, it cannot construct a further inference
> upon the initial inference in order to establish a further fact unless it can be found
> that the original, basic inference was established to the exclusion of all other
> reasonable inferences.

*Stanley v. Marceaux*, 991 So. 2d 938, 940 (Fla. 4th DCA 2008); *see also Nielsen v. City of

Sarasota*, 117 So. 2d 731, 733 (Fla. 1960). "The rule that an inference may not be stacked upon

another inference **is designed to protect litigants from verdicts based upon conjecture and

speculation**." *Id.* (emphasis added). Inferences may not be "pyramided" on one another, except

where the first inference can be said to be established fact such that there can be no contrary

reasonable inference. *Green House, Inc. v. Thiermann*, 288 So. 2d 566, 568 (Fla. 2d DCA 1974).

This rule applies in the context of expert testimony: "An opinion derived from facts not in

evidence [that] permitted the expert to express 'unstated and perhaps unwarranted factual

assumptions concerning the event'" is impermissible. *Young-Chin v. City of Homestead*, 597 So.

2d 879, 882 (Fla. 3d DCA 1992); *see also Hancock v. Schorr*, 941 So. 2d 409, 414 (Fla. 4th DCA

2006) (May, J., dissenting) ("The fatal flaw in the plaintiff's proof on causation was that it was

based on speculation and a stacking of inferences for there was no factual basis to support the expert's hypothesis."); *Shartz v. Miulli*, 127 So. 3d 613, 619 (Fla. 2d DCA 2013) (holding that without testimony linking alleged negligence to injuries, expert's "opinions . . . [were] conclusory, speculative, and not based on facts presented at trial, requiring an impermissible stacking of inferences").

Stated differently, there is no evidence to support Plaintiff's claims, only inferences upon inferences from circumstantial evidence that result in an improper pyramiding, or stacking, of inferences that result in nothing more than conjecture and speculation. *Stanley*, 991 So. 3d at 940. As such, the Plaintiff has no evidence to demonstrate that the Defendants caused the attack by Mr. Lawson or Plaintiff's damages. Her case should be disposed of on summary judgment.

## CONCLUSION

Defendants are immune from suit because of vertical workers' compensation statutes precluding claims against a statutory employer when workers' compensation benefits have been paid, as in the instant case. Furthermore, Defendants owed Plaintiff no duty to prevent or protect from an unexpected, unforeseeable, targeted shooting by a disgruntled tenant. Plaintiff has failed to provide any evidence to suggest otherwise, or to demonstrate the scope of the duty owed. Plaintiff has also failed to present any evidence that Defendants had knowledge or information that would have prevented the shooting from occurring which, according to Plaintiff, no one had reason to expect. Even if Defendants owed a legal duty to Plaintiff, there is no evidence to support Plaintiff's theory of causation, and to do so would amount to an improper pyramiding of inferences. For these reasons, and those set forth above, Defendants request this Court grant the instant Motion for Final Summary Judgment and enter judgment in their favor as a matter of law.

4:23-cv-00317-WS-MAF
*Keeler, Amber v. University Gardens Students, L.P., et al.*
Motion for Summary Judgment

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1(F)

The Motion and Memorandum are 7,638 words in length, combined, according to the word-processing system's word count.

WHEREFORE, Defendants UNIVERSITY GARDENS STUDENTS, LP, and ROSDEV HOSPITALITY U.S., LLC, respectfully request this Honorable Court grant their Motion for Summary Judgment and for any and all relief this Court deems appropriate and proper.

**COLE, SCOTT, KISSANE, P.A.**

/s/ Sami R. Achem, Jr.
SAMI R. ACHEM, JR., ESQ.
Florida Bar No.: 93892
JOHN DARNELL
Florida Bar No.: 1020230
Counsel for Defendants, UNIVERSITY GARDENS STUDENTS, LP and ROSDEV HOSPITALITY U.S., LLC
4190 Belfort Road, Suite 300
Jacksonville, Florida 32216-1461
Telephone (904) 672-4046
Facsimile (904) 672-4050
sami.achemjr@csklegal.com
john.darnell@csklegal.com
kathryn.mcmorrow@csklegal.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 10th day of September 2024, a true and correct copy of the foregoing was filed with the Clerk of Court by using the CM/ECF system, which will send an automatic notice of electronic filing and a copy to counsel of record.

4:23-cv-00317-WS-MAF
*Keeler, Amber v. University Gardens Students, L.P., et al.*
Motion for Summary Judgment

**COLE, SCOTT, KISSANE, P.A.**

/s/ Sami R. Achem, Jr.
SAMI R. ACHEM, JR., ESQ.
Florida Bar No.: 93892
JOHN DARNELL
Florida Bar No.: 1020230
Counsel for Defendants, UNIVERSITY GARDENS
STUDENTS, LP and ROSDEV HOSPITALITY
U.S., LLC
4190 Belfort Road, Suite 300
Jacksonville, Florida 32216-1461
Telephone (904) 672-4046
Facsimile (904) 672-4050
sami.achemjr@csklegal.com
john.darnell@csklegal.com
kathryn.mcmorrow@csklegal.com